## ANDY COX v. THE STATE.

*No. 6643.   Decided June 26.*

1. **Practice—Venue** is an issue to which the doctrine of reasonable doubt does not apply, and which, like any other issue on a trial, may be proved by circumstantial evidence. See the opinion for evidence *held* sufficient to support the allegation of venue.

2. **Theft—Evidence—Ownership—Case Stated.**—The indictment contained four counts, the first alleging the ownership of the stolen animal in Sparlin, the second in Wolf, the third in Smith, and the fourth in a person unknown. It appears that the defendant had been previously tried for the same offense under an indictment alleging the ownership in Sparlin, and that on that trial a witness named Maloney testified that in May, 1886, he saw some parties pen some horses at Baker's pen; that he saw some of the parties rope a gray animal and throw it down, and that one of those parties, whom he did not know, had a knife in his hand. Maloney being dead, his said testimony was reproduced by the State. After the evidence was closed the district attorney *nolle prossed* the first three counts in the indictment. It is claimed by the defense that the action of the district attorney in dismissing the count alleging ownership in Sparlin destroyed the competency of the testimony of Maloney as reproduced by the State, and that the jury, in determining the guilt of the defendant under the last count in this indictment, could not consider it. But *held*, that the position can not be maintained. See the opinion on the question.

3. **Same—Intent—Fact Case.**—See the opinion for the substance of evidence *held* insufficient to support a conviction for theft because insufficient to establish a fraudulent intent.

APPEAL from the District Court of Lampasas. Tried below before Hon. W. A. Blackburn.

This conviction was for horse theft, and the penalty assessed by the verdict was a term of five years in the penitentiary.

The opinion sufficiently discloses the case.

*Fisher & Ward,* for appellant.

W. L. *Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—It is not essential that the venue of an offense be established by positive testimony, but only that from the facts in evidence the jury may reasonably conclude that the offense was committed in the county alleged. The doctrine of reasonable doubt does not

apply to the issue of venue. Circumstantial evidence is as competent to establish the venue as it is to establish any other issue in the case. Willson's Crim. Stats., sec. 1719.

John Pool, State's witness, testified: "The sorrel L F mare was eight or ten years old, and she and the gray filly (this latter being the alleged stolen animal) ran on the range in Lampasas County. The black S E mare and the sorrel L F mare ran on the range together, and had been running on the range since I had lived there. The gray filly and the black horse also ran in the same bunch." It was proved by several witnesses that the animals ranged on Indian Branch and Patterson Creek. The two Ellises, witnesses for the State, both testified that they lived "on Patterson Creek in Lampasas County, Texas." We are of opinion that the venue of the offense, which was alleged to be in Lampasas County, is sufficiently proved.

It appears that there had been a previous trial of this defendant for the theft of this same animal under an indictment which alleged the ownership of the animal to be in one Sarah Sparlin. On that trial a boy by the name of George Maloney had testified for the State and subsequently had died. In the present case the indictment contained four counts, the first alleging the ownership of the animal in Sarah Sparlin, the second in Amanda Wolf, the third in F. L. Smith, and the fourth in some person to the grand jury unknown. On the trial the evidence of the deceased witness, George Maloney, as given in the previous trial, was reproduced by one Wood, who had heard him testify on that trial. No objection was made by the defense to the reproduction of this evidence by Wood, and the same went to the jury without objection of any character. His testimony was that he, Wood, had been of counsel for defendant on the former trial, and that he remembered the boy George Maloney who then testified. Witness then said: "This boy testified that he was at the Baker pen one evening in May, 1886, when somebody penned some horses there in the pen; that he was at the pen on a shed or on the fence, and saw some of the parties rope a gray animal and throw it down, and saw some one with a knife in his hand, but did not know who it was. Some of the parties told him to get down and go away, and he did so." This is the whole of the testimony of George Maloney as reproduced by Wood.

After all the evidence was in the district attorney *nolle prossed* the three first counts of the indictment, and announced that he would claim a conviction alone upon the last count, to-wit, the one alleging the ownership of the animal to be in "some person to the grand jury unknown."

It is insisted that the whole case became changed after the count alleging ownership in Sarah Sparlin was dismissed, and that it was no longer the same case as that in which the deceased witness, Maloney, had testified; and that being another and a separate and distinct case his evidence on the former trial became inapplicable, inadmissible, and illegal,

and could not be used or further considered in support of any of the issues involved in the case upon which the prosecution now claimed a conviction. We have quoted the testimony in full, and it will be noted that at the time of its introduction it was both legal and admissible to prove the count alleging ownership in Sarah Sparlin, that being the identical charge in the indictment on the former trial. This is conceded on the part of appellant's counsel. It will further be noted that the deceased witness testified nothing as to ownership and knew nothing about it. The facts testified to by him unquestionably related to the same transaction, to the same defendant, and to the same animal as were involved in the former trial, and were as pertinent to the one case as the other. Moreover, the right to be confronted with the witness as to his testimony, and the right of cross-examination, had been fully accorded to and exercised by the defendant at the former trial. More than that, the facts deposed to by this witness only tended to show that the animal was thrown down and defendant's brand picked upon her in Baker's pen, and these same facts are substantially established by other testimony, which shows that she was unbranded when she was taken up by defendant, and that when she was seen the next day at Blalock's pen by Pool and others she had defendant's brand, which appeared to have been picked upon her. Under these facts and circumstances it would appear that, to say the least of it, if we concede that the reproduced evidence was inapplicable to the allegation of ownership in the fourth count, simply because it had been admitted in support of the first count, which was no longer in the case, yet, nevertheless, as to the facts deposed to it was in truth and in fact as applicable to the one count as to the other, because the witness knew nothing about and had testified to nothing concerning the ownership of the animal. Had the witness himself been alive and testifying this evidence would beyond question have been admissible, legitimate, and pertinent to the issue in the fourth count. No good reason has been assigned why under the circumstances its reproduction, he being dead, was not equally as competent and legitimate. We are of opinion that it was both competent and admissible, and that even if it had been objected to, or a motion made by defendant to withdraw it, that such objection or motion should have been overruled. Nor did the evidence come within the rule which would require the court to limit or restrict it in the charge to any specific purpose. It was not introduced for any specific purpose foreign to the main issue. The objection to the charge of the court that it did not withdraw the evidence is untenable.

It is urgently insisted that the verdict and judgment should be set aside on account of misconduct of the jury, or rather, because the verdict was not a fair and impartial one by reason of new and additional testimony or statements made to the jury in their retirement, and when they were considering of their findings by one of their number. Affidavits impeaching

the verdict were made by several of the jurymen to the effect that after consultation they failed to agree, two of their number, to-wit, Lincecum, the foreman, and one Clayton, standing out against and dissenting from the majority; that in this attitude of the case another one of their number, one Rasberry, stated to the jury that the defendant was a man of bad character; that he had been charged with divers thefts; that he had been known to harbor thieves, and that his, defendant's, witnesses were all of bad character; that after this statement of Rasberry, Lincecum and Clayton came over and voted for conviction. On the trial of this issue, which was presented in the defendant's motion for a new trial, the two jurors Lincecum and Clayton, each testified that in finding and agreeing to the verdict as returned by the jury they were not influnced by anything which the juror Rasberry had said, but that they found their verdict solely upon the law and the testimony. A mere statement made by one juror to another or his fellows in reference to the character of the defendant is not *per se* ground for a new trial. Austin v. The State, 42 Texas, 355. And unless the verdict was probably influenced by the statement of a juror to his fellows as to the character for credibility of a witness for defendant, a new trial will not be granted on that ground. Anschicks v. The State, 6 Texas Ct. App., 524; McKissick v. The State, 26 Texas Ct. App., 673; Lucas v. The State, 27 Texas Ct. App., 322; Willson's Crim. Stats., sec. 2545.

But whilst we have differed from learned counsel upon all the points heretofore discussed, we are constrained to agree with him as to the sufficiency of the evidence. We are of opinion that it is of too doubtful a character upon the issue of fraudulent intent to authorize us in upholding the verdict and judgment. All the evidence shows defendant was employed in gathering his sister's horses. He did not know and had never seen the animal in question. It was running in the bunch with his sister's animals. All his acts with regard to the animal were open, without effort at concealment, and to several offers made him to buy and bet the animal he declined because it was not his but his sister's. He cut and turned out of those he had gathered such animals as he knew were not his sister's. It is true there is some evidence showing that his brand was picked upon the animal after he took her into possession, but if he did so after he had taken the animal, believing it to be his sister's, this would not establish the fraudulent intent at the time of the taking. We believe, under the facts exhibited in the record, and the law as given in the charge, that the verdict of the jury is not supported by the law and the evidence, and that the court erred in this regard in not granting a new trial.

Because the evidence is insufficient the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.